William F. KELLY

v.

PENNSYLVANIA RAILROAD COM-
PANY, Appellant.

No. 12074.

United States Court of Appeals
Third Circuit.

Argued March 8, 1957.

Decided May 16, 1957.

Rehearing Denied July 8, 1957.

Philip Price, Philadelphia, Pa., (F. Hastings Griffin, Jr., Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellant.

B. Nathaniel Richter, Philadelphia, Pa. (Charles A. Lord, Seymour I. Toll, Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and McILVAINE, District Judge.

GOODRICH, Circuit Judge.

This is an appeal by defendant from a judgment for plaintiff and from a district court refusal to enter summary judgment in its favor in an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Plaintiff was injured while working on the premises of the General Electric Company in West Philadelphia. He was hit by a locomotive which was moving some freight cars from one part of General Electric's yard to another. Plaintiff first sued General Electric upon the theory that it was a carrier subject to the Act. Defendant won this suit because it was found that General Electric was not a common carrier. Kelly v. General Electric Co., D.C.E.D.Pa., 110 F. Supp. 4 affirmed per curiam, 3 Cir., 204 F.2d 692, certiorari denied, 1953, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390.

Then plaintiff sued the Pennsylvania Railroad on the theory that he was an employee of the Pennsylvania Railroad and, therefore, came under the Federal Employers' Liability Act, citing e. g. Pennsylvania R. Co. v. Barlion, 6 Cir., 1949, 172 F.2d 710. The trial court allowed the question to go to the jury asking that body whether it thought that plaintiff came within the spirit of the statute. This patently erroneous charge would be sufficient to call for a new trial. But because we think that on the undisputed facts plaintiff is not entitled to recover under the federal statute we shall not order a new trial but will instead direct the entry of judgment for defendant.

We have had in recent years two cases in this Court dealing with workmen who worked in the yard of a manufacturing plant and who were injured in the course of intrayard movement of freight cars. In each case we held that plaintiff was not the employee of a carrier subject to the Federal Employers' Liability Act. Docheney v. Pennsylvania R. Co., 3 Cir., 60 F.2d 808, certiorari denied, 1932, 287 U.S. 665, 53 S.Ct. 222, 77 L.Ed. 573; Shaw v. Monessen Southwestern Ry. Co., 3 Cir., 1953, 200 F.2d 841. In the Shaw case it was pointed out that the question involved was a mixed one of fact and law. The test for employment of one person by another is a legal test but what a particular employee was doing at the time of injury is a factual question. In the case before us there are no sharp disagreements upon the facts; the disagreement is in the application of the facts. We shall take the facts most favorable to plaintiff in considering whether, by any possibility, the Pennsylvania Railroad is chargeable with the consequence of the accident to him.

1. In Shaw we pointed out that the place plaintiff worked and the equipment he used were exclusively the premises and property of Pittsburgh Steel Company and that the work he was doing at the time he was injured was that of the Steel Company.

That set of facts is repeated in the case before us. Kelly worked on General Electric premises. The work he was doing at the time he was injured was fixing a switch which belonged to General Electric and he was hit by a General Electric locomotive operated by a General Electric crew. The train operation in which plaintiff was hurt was wholly within General Electric's property and for the benefit of General Electric.

2. In Shaw it was pointed out that plaintiff was paid by the industrial employer and not the railroad for his work on the day he was injured. The same is true here.

3. In Shaw plaintiff sometimes worked for and was paid by the railroad, was assigned to his work in the industry yard by a railroad employee, was covered by a collective bargaining contract signed by the industry and the railroad, and had tenure and seniority benefits as a railroad employee. Kelly was hired by General Electric and had no such connections with defendant railroad.

4. In Shaw it was pointed out that the work plaintiff was doing was in charge of the industrial employer, not the railroad.

We thought that very important in the Shaw case and think it is here also.

Kelly was directed by foremen of General Electric. He was instructed in his duties as a laborer by a General Electric fellow employee. It is true that once he salted a frozen switch at the request (or direction) of a railroad employee and on two, maybe more, occasions he was directed to pick up debris by a railroad employee. However, the principal part of his job with General Electric was to pick up debris and in performing this assignment he was doing the work of General Electric not the railroad.

As one reads the record in this case and goes back again over the two cases last cited it seems clear to us that this case has less pointing to railroad employment than did either of the others.

Plaintiff suggests that the operation of the General Electric private yard could only be done by a common carrier and, therefore, General Electric must have been functioning as an agent of defendant. From this he concludes that plaintiff was an employee of defendant for purposes of the Federal Employers' Liability Act. Compare Pennsylvania R. Co. v. Barlion, 6 Cir., 1949, 172 F.2d 710, with Del Vecchio v. Pennsylvania R. Co., 3 Cir., 233 F.2d 2, certiorari denied, 1956, 352 U.S. 909, 77 S.Ct. 146, 1 L. Ed.2d 117. The arguments suggested give credit to the ingenuity of counsel but we do not find them helpful in clarifying the case. We are told that in 1923 and 1924 the railroad got permission from the City of Philadelphia to lay tracks across 68th Street, then a dedicated but unopened public highway, "to and into" the General Electric plant.

This same argument, in a somewhat different way, came up when plaintiff sued General Electric, 110 F.Supp. at pages 7, 8. We do not see its significance. If it ever had any it was lost because by ordinance in 1926 this portion of 68th Street was stricken from the City plan.

Then plaintiff says that by a statute of 1851 connection between defendant railroad and General Electric's private plant railroad was forbidden and, therefore, the plant railroad must have been part of defendant's common carrier system.[1] If plaintiff's interpretation of this statute means that it was illegal for the railroad to operate facilities connecting with General Electric's private facilities, the argument proves too much. Both Pennsylvania statutes[2] and the federal Interstate Commerce Act[3] recognize the existence of lateral railroads and private sidetracks and require common carriers to connect with them.

The movement of freight cars within an industrial plant is not carrier car service but the operation of a plant facility. United States v. Wabash R. Co., 1944, 321 U.S. 403, 64 S.Ct. 752, 88 L.Ed. 827; New York Central & H. R. R. Co., v. General Electric Co., 1916, 219 N.Y. 227, 114 N.E. 115, 1 A.L.R. 1417, certiorari denied, 1917, 243 U.S. 636, 37 S. Ct. 400, 61 L.Ed. 941. The former suit by plaintiff against General Electric established that the intraplant movement of these cars was not common carriage. We have no doubt of the soundness of that conclusion.

If there were points of substantial dispute on the facts, this case would have

---

1. The statute relied on is found in Pa.Stat. Ann. tit. 67, § 363 (Purdon 1930) which provides:

"Connection of private with public railroads prohibited

"It shall not be lawful for any private individual, or association of individuals, or any company or companies, to construct a private railroad connecting with any railroad authorized to be constructed by the laws of this state, with the Ohio and New York state lines, or with any railroad constructed or to be constructed in the states of Ohio and New York; and it shall not be lawful for any rail-

road company authorized by the laws of this state to connect with any such private railroad; and any violation of the provisions of this act shall subject all individuals or association of individuals violating the same, to the jurisdiction of the courts of this state, and to such forfeiture as the legislature may hereafter direct. (1851, April 15, P.L. [1852] 720, § 7.)"

2. Pa.Stat.Ann. tit. 66, § 1176 (Purdon 1941); Id. tit. 67, §§ 472, 781 et seq. (Purdon 1930).

3. 49 U.S.C.A. § 1(9).

to go back for retrial and proper instructions. We believe we have been careful not to interfere with the fact-finding function of the jury on any disputed question here. We believe that on facts most favorable to plaintiff it is clearly established that he was not an employee of the Pennsylvania Railroad, was not doing its work at the time he was injured and he has no claim against the railroad under the Federal Employers' Liability Act.

The judgment will be reversed and the case remanded to the district court with instructions to enter judgment for defendant.