**W. H. GARRETT, Appellant,**

v.

**SOUTHERN RAILWAY COMPANY,**
**Appellee.**

**No. 13975.**

United States Court of Appeals
Sixth Circuit.

April 22, 1960.

John H. Doughty, of Hodges, Doughty & Carson, Knoxville, Tenn. (M. G. Goodwin, Lenoir City, on the brief) for appellant.

Clyde W. Key of Key & Lee, Knoxville, Tenn., for appellee.

Before McALLISTER, Chief Judge, MARTIN, Circuit Judge, and HOLLAND Senior District Judge.

MARTIN, Circuit Judge.

In this court action, a wheel moulder in the employ of Lenoir Car Works, a Tennessee corporation, brought suit against the Southern Railway Company for alleged injuries from silicosis, claimed to have been contracted from silica dust which permeated the foundry. Upon completion of the trial, at which much evidence was received, the United States District Judge entered judgment in favor of the defendant railway company. Plaintiff's appeal to this court is from that judgment. The opinion of the District Court will be found in 173 F. Supp. 915, 918.

Appellant contends that the district court was in error in finding that the Lenoir Car Works was not the alter ego, adjunct, subsidiary, agent or instrumentality of the appellee, Southern Railway Company, and consequently was not required to respond in damages for the personal injuries sustained by appellant. Appellant insists, moreover, that the district court also erred in finding that the Southern Railway Company did not exercise such control over Lenoir Car Works as to require a determination that the railway company was the employer of appellant within the meaning of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

In a carefully considered opinion, the United States District Court found that there was no evidence that the Southern Railway Company dictated the management of the Lenoir Car Works, although it owned the entire capital stock of that corporation. It was found that the evidence indicated that an individual, Henry Marius, was in full control of the operation of the car works. He established prices and handled all negotiations and collective bargaining agreements. Lenoir paid local taxes, had local counsel, and maintained workmen's compensation.

The district judge noted that "a substantial part of its requirements in the field of operation of Lenoir were bought elsewhere." Lenoir sold substantial quantities of its product to other companies than Southern; it operated no rolling stock; and had nothing to do with the transportation business.

The court found further that the facts did not reveal such intimacy and inseparability of control as would lead to the conclusion that the Southern Railway Company and Lenoir Car Works were one and the same. Lenoir was not, in the words of the Federal Employers' Liability Act, a "common carrier by railroad"; it was not performing the nondelegable duties of a railroad; it was not the operator of a terminal; and it performed no switching or transportation functions at all. It was distinctively a manufacturer, performing no common-carrier operations.

Upon the issue of whether or not the control by Southern of Lenoir was of such character as to constitute the latter a mere adjunct of the former, the court held that no such control was evident. The following cases were cited: Kentucky Electric Power Co. v. Norton Coal Mining Co., 6 Cir., 93 F.2d 923; Atlantic Coast Line v. Shields, 5 Cir., 220 F.2d 242, 246; Taylor v. Standard Gas & Electric Co., 10 Cir., 96 F.2d 693.

In Kentucky Electric Power Company v. Norton Coal Company, supra, 93 F.2d at page 926, this court said: "On the other hand, it is likewise well settled that a corporation is ordinarily an entity, separate and apart from its stockholders, and mere ownership of all the stock of one corporation by another, and the identity of officers of one with officers of another, are not alone sufficient to create identity of corporate interest between the two companies or to create the relation of principal and agent or to create a representative or fiduciary relationship between the two. If such stock ownership and potential control be resorted to only for the purpose of normally participating in the affairs of the subsidiary corporation in a manner usual to stockholders and not for the purpose of taking some unfair advantage of the subsidiary or using it as a mere adjunct to the main corporation or as a subterfuge to justify wrongdoing, their identity as separate corporations will not be disregarded but their respective rights when dealing with each other in respect to their separate property will be recognized and maintained. The extent of stock ownership and mere potential control of one company over another has never been regarded as the determining factor in the consideration of such cases. Something must be disclosed to indicate the exercise of undue domination or influence resulting in an infringement upon the rights of the subservient corporation for the benefit of the dominant one. Otherwise, the rights of the separate corporations in respect to their corporate property must be governed by the rules applicable in ordinary cases. [Citing cases.]"

The district court concluded that, upon the principles of the Kentucky Electric Power Company case, the control of Southern Railway Company over Lenoir Car Works was not such as constituted Lenoir an adjunct of Southern. We think this conclusion was correct.

Accordingly, the judgment of the district court dismissing the complaint herein is affirmed.