## BRADY *v.* TERMINAL RAILROAD ASSOCIATION.

No. 163.   Argued January 4, 5, 1938.—Decided January 31, 1938.

*Mr. Mark D. Eagleton,* with whom *Messrs. Merritt U. Hayden* and *Roberts P. Elam* were on the brief, for petitioner.

*Mr. Walter N. Davis,* with whom *Messrs. Thomas M. Pierce* and *Joseph L. Howell* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Supreme Court of Missouri reversed a judgment which petitioner had recovered under the Federal Safety Appliance Act, 340 Mo. 841; 102 S. W. (2d) 903, and rendered a final judgment in favor of respondent. See, *State* v. *Ragland,* 339 Mo. 452, 456, 458; 97 S. W. (2d) 113. In view of the importance of the question in the administration of the federal statute, this Court granted certiorari.

Petitioner was employed by the Wabash Railway Company as a car inspector in its yard at Granite City, Illinois. He was injured in November, 1927, while inspecting a car which was one of a string of cars brought by the respondent, Terminal Railroad Association of St. Louis, from St. Louis to Granite City and placed upon a track of the Wabash known as a "receiving" or "inbound" track. The purpose of the inspection was to determine whether the cars were to be accepted by the Wabash.

Both the Wabash and the Terminal companies were carriers engaged in interstate commerce.

While making his inspection petitioner stood upon one of the side ladders of the car, and, in attempting to pull himself to the top of the car, petitioner took hold of a grabiron which, with the board to which it was attached, became loose, causing him to fall. The board was found to have "become rotten from end to end on the under side, and to some extent on the upper side around the bolts by which the grabiron was attached to it."

Petitioner first sued his employer, the Wabash, under the provisions of the Federal Safety Appliance Act, but a judgment in his favor was reversed upon the ground that the car had not yet been accepted by the Wabash Company which therefore had not hauled or used it, or permitted it to be hauled or used, within the prohibition of the statute. *Brady* v. *Wabash Ry. Co.,* 329 Mo. 1123; 49 S. W. (2d) 24. While that suit was pending, petitioner brought the present suit against respondent.

The federal statute, Act of April 14, 1910, c. 160, § 2, 36 Stat. 298, 45 U. S. C. 11, provides that

"it shall be unlawful for any common carrier subject to the provisions of this Act to haul, or permit to be hauled or used on its line any car subject to the provisions of this Act not equipped with appliances provided for in this Act, to wit: All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand holds or grab irons on their roofs at the tops of such ladders:"

The Act of 1910 supplemented the provisions of the Act of March 2, 1893, c. 196, 27 Stat. 532, 45 U. S. C. 7, which provided in § 8:

"Any employee of any common carrier engaged in interstate commerce by railroad who may be injured by any locomotive, car, or train in use contrary to the provision

of this chapter shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge."

See, also, Federal Employers' Liability Act, 35 Stat. 65, c. 149, § 4, 45 U. S. C. 54.

The first question is whether the car can be said to have been in use by the respondent at the time in question. The statute gives no ground for holding that it was the intent of Congress that in a situation such as is here presented neither the Wabash nor the Terminal Association should be subject to the statutory duty. The "use, movement or hauling of the defective car," within the meaning of the statute, had not ended when petitioner sustained his injuries. *Chicago Great Western R. Co.* v. *Schendel,* 267 U. S. 287, 291, 292. The car had been brought into the yard at Granite City and placed on a receiving track temporarily pending the continuance of transportation. If not found to be defective, it would proceed to destination; if found defective, it would be subject to removal for repairs. It is not a case where a defective car has reached a place of repair. See *Baltimore & Ohio R. Co.* v. *Hooven,* 297 Fed. 919, 921, 923; *New York, C. & St. L. R. Co.* v. *Kelly,* 70 F. (2d) 548, 551. The car in this instance had not been withdrawn from use. *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 21, 22; *Delk* v. *St. Louis & San Francisco R. Co.,* 220 U. S. 580, 584–586; *Great Northern Railway Co.* v. *Otos,* 239 U. S. 349, 351; *Chicago Great Western R. Co.* v. *Schendel, supra.* The car was still in use, though motionless. *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Goneau,* 269 U. S. 406. In view of that use, either the Terminal Association or the Wabash was subject to the obligation imposed by the statute.

The question then is whether the responsibility of the Terminal Association, which brought in the car, had ended. We think that question is answered by the un-

14

disputed fact that it was placed by the Terminal Association on the receiving track to await inspection and acceptance by the Wabash.

The Wabash had not accepted it. The jury, which found for petitioner, were instructed that as a condition of that verdict it was necessary for them to find that petitioner "was required to go upon said car for the purpose of inspecting the equipment thereon and of accepting or rejecting said car on behalf of his employer, the Wabash Railway Company." We cannot agree with the view, expressed in the opinion of the state court in reversing the judgment, that "granted that the cars were still (in the legal sense) in the possession of the Terminal," it might still be held that "the right of control" had passed to the Wabash. As the Wabash had not accepted the car, the Wabash had not assumed control and petitioner was examining the car in order to determine whether the Wabash should assume control.

As the car had not been withdrawn from use and was still in the possession of the Terminal Association, its statutory obligation continued and the question is whether that duty was owing to petitioner. The fact that petitioner was not an employee of the Terminal Association did not necessarily absolve it from duty to him. We have said that "the nature of the duty imposed by the statute and the benefits resulting from its performance" usually determine what persons are entitled to invoke its protection. It was in this view that we held that the power brakes required by the Safety Appliance Act were not only for the safety of railway employees and passengers on trains but also of travelers on the highways at railway crossings. *Fairport R. Co.* v. *Meredith,* 292 U. S. 589, 596, 597. In the instant case, petitioner in the course of his duty would have occasion to go upon the car and use the grabiron, and accordingly the benefit of the statute would extend to him, although

he was not employed by the carrier holding the car in use, unless he was outside the scope of the statute because of the special character of his work. His work was that of inspection to discover defects of the sort here found to exist as well as others.

This final question must be determined in the light of the nature of the obligation resting upon the carrier in relation to the use of a defective car. The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one and the carrier is not excused by any showing of care however assiduous. *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281, 295; *Chicago, B. & Q. Ry. Co.* v. *United States,* 220 U. S. 559, 570; *Louisville & Nashville R. Co.* v. *Layton,* 243 U. S. 617, 620, 621; *Great Northern Ry. Co.* v. *Otos, supra.* The breadth of the statutory requirements is shown by the fact that it embraces all locomotives, cars and similar vehicles used on any railway that is a highway of interstate commerce and is not confined exclusively to vehicles engaged in such commerce. *Southern Ry. Co.* v. *United States,* 222 U. S. 20. Laying down this comprehensive rule as a matter of public policy, Congress has made no exception of those employed in inspecting cars. The statute has been liberally construed "so as to give a right of recovery for every injury the proximate cause of which was a failure to comply with a requirement of the Act." *Swinson* v. *Chicago, St. P., M. & O. Ry. Co.,* 294 U. S. 529, 531. In *Davis* v. *Wolfe,* 263 U. S. 239, 243, reviewing the earlier cases, the Court held that one can recover "if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection." Even where the required equipment is known to have become defective and the car is being hauled to the nearest avail-

able point for repairs, while the Act relieves the carrier in such a case from the prescribed penalties, the carrier still remains subject by the express terms of the statute to civil liability for injuries sustained by "any railroad employee" in the course of such a movement by reason of the defective equipment. Act of April 14, 1910, c. 160, § 4, 36 Stat. 299; 45 U. S. C. 13. See *New York, C. & St. L. R. Co.* v. *Kelly, supra.*

We think that these considerations require the conclusion that one is not to be denied the benefit of the Act because his work was that of inspection for the purpose of discovering defects. As we said in *Louisville & Nashville R. Co.* v. *Layton, supra,* the liability "springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in or the work which he may be doing at the moment when he is injured," provided the defective equipment is the proximate cause of the injury.

The fact that petitioner was looking for defects of the sort which caused his injury does not prevent recovery as the statute expressly excludes the defense of assumption of risk. 45 U. S. C. 7, 54.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

Mr. Justice Cardozo took no part in the consideration and decision of this case.