In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2164

BRADLEY LEDURE,

*Plaintiff-Appellant*,

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cv-00737-JPG-GCS — **J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 12, 2020 — DECIDED JUNE 17, 2020

Before BAUER, KANNE, and BARRETT, *Circuit Judges*.

BAUER, *Circuit Judge.* Bradley LeDure, a conductor for Union Pacific Railroad Company, slipped and fell while preparing a locomotive for departure. LeDure brought suit for negligence against Union Pacific under the Locomotive Inspection Act and the Federal Employers' Liability Act. The district court granted summary judgment for Union Pacific. It

found the Locomotive Inspection Act inapplicable and then determined that LeDure's injuries were otherwise unforesee-able because he slipped on a small "slick spot" unknown to Union Pacific. For the following reasons, we affirm.

## I.  BACKGROUND

On August 12, 2016, at about 2:10 a.m., LeDure reported to work at a rail yard in Salem, Illinois. His job was to assemble a train for a trip to Dexter, Missouri. The first step was to determine how many locomotives were necessary and tag each one to indicate whether or not they would operate.

Three locomotives were coupled together on a sidetrack. The locomotives arrived at 2:00 a.m. from Chicago, Illinois. LeDure decided that only one locomotive would be powered on. LeDure tagged the first locomotive for operation and the second for non-operation. He moved to the final locomotive, UP5683, to shut it down and tag it accordingly.

While on the exterior walkway of UP5683, LeDure slipped and fell down its steps. LeDure got up and proceeded to power down and tag the locomotive. He returned to where he fell and, using a flashlight, bent down to identify a "slick" sub-stance. LeDure reported the incident to his supervisor. He gave a written statement before going home. Union Pacific con-ducted an inspection and reported cleaning a "small amount of oil" on the walkway.

LeDure sued Union Pacific for negligence. He alleged violations of the Locomotive Inspection Act and the Federal Employers' Liability Act, arguing that Union Pacific failed to maintain the walkway free of hazards. Both parties moved for

summary judgment. The district court agreed with Union Pacific and dismissed LeDure's claims with prejudice. The court found the Locomotive Inspection Act inapplicable since UP5683 was not "in use" during the incident. It also held LeDure's injuries were not reasonably foreseeable because they resulted from a small "slick spot" unknown to Union Pacific. LeDure moved to alter or amend the judgment, and the court denied the motion. LeDure timely appealed.

## II. DISCUSSION

We review *de novo* the grant of summary judgment. *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019). Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A court will grant summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

The Locomotive Inspection Act and the Federal Employers' Liability Act together provide redress for injured railroad workers. Specifically, the Locomotive Inspection Act supplements a Federal Employers' Liability Act negligence claim. The Locomotive Inspection Act delegates authority to the Secretary of Transportation to create regulations delineating the safe "use" of locomotives. 49 U.S.C. § 20701. If the plaintiff shows a regulatory violation, this establishes negligence per se. The plaintiff must still show, per the Federal Employers' Liability Act, the injury resulted "in whole or in part" from this negli-

gence. *Crane v. Cedar Rapids Iowa City Ry.*, 395 U.S. 166 (1969) (citing 45 U.S.C. § 51).

The first question for the Locomotive Inspection Act is whether the locomotive was "in use" at the time of the accident. *Brady v. Terminal Rail Ass'n of St. Louis*, 303 U.S. 10, 13 (1938); *Lyle v. Atchison T. & S.F. Ry. Co.*, 177 F.2d 221, 222 (7th Cir. 1949). The district court noted the circuit courts' various tests. For instance, while the Fourth Circuit created a totality of the circumstances analysis, the Fifth Circuit has said a locomotive is "in use" if it is assembled and the crew has completed pre-departure procedures. *Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 329 (4th Cir. 1998); *Trinidad v. Southern Pacific Transportation Co.*, 949 F.2d 187, 189 (5th Cir. 1991).

In determining that UP5683 was not in use, the district court properly applied *Lyle* and its holding that "to service an engine while it is out of use, to put it in readiness for use, is the antithesis of using it." *Lyle*, 177 F.2d at 223. LeDure essentially seeks to limit this holding to say a locomotive is not "in use" only when it is being repaired, but this is an unduly narrow reading of *Lyle* and its progeny. *See Tisneros v. Chicago & N.W. Ry.* Co, 197 F.2d 466 (7th Cir. 1952). The district court reasoned that UP5683 was stationary, on a sidetrack, and part of a train needing to be assembled before its use in interstate commerce. For those reasons, we agree it was not "in use" and that the Locomotive Inspection Act and its regulations are inapplicable.

LeDure argues that Union Pacific is nevertheless liable because it did not clean up the slick spot or alternatively because UP5683's walkway traction was not adequately maintained. For claims about unsafe work conditions, an

essential element of a Federal Employers' Liability Act claim is foreseeability, or whether there were "circumstances which a reasonable person would foresee as creating a potential for harm." *Holbrook v. Norfolk Southern Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005) (quoting *McGinn v. Burlington N. R.R.*, 102 F.3d 295, 300 (7th Cir. 1996)). The plaintiff "must show that the employer had actual or constructive notice of those harmful circumstances." *Id.* (citing *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1063 (7th Cir.1998)).

The district court correctly held that LeDure failed to provide evidence sufficient to prove his injuries were reasonably foreseeable. Whereas the *Holbrook* plaintiff identified the potential source of oil he slipped on, LeDure does not claim Union Pacific had notice of the slick spot or any hazardous condition that could have leaked the oil. Instead, he argues that Union Pacific should have inspected UP5683 and cleaned the spot beforehand. But, as in *Holbrook*, there is no evidence that an earlier inspection would have cured the hazard. This is problematic when LeDure testified the spot was small, isolated, and without explanation. Under these facts, a jury could not find Union Pacific knew or should have known about the oil or its hazard to LeDure.

Finally, LeDure argues the district court failed to address his argument that UP5683's walkway was not adequately maintained. This is inaccurate. LeDure introduced pictures of UP5683's walkway two years after the incident and pictures of another locomotive walkway that did not use metal studs for traction. As the district court noted, LeDure presented evidence to support a design-defect theory but nothing to show negligence. Just as importantly, the cause of his injury was

undisputedly the slick spot and there is no evidence—aside from LeDure's lay testimony—to suggest the alternate design pattern could have prevented his injury.

### III.  CONCLUSION

We conclude that the Locomotive Inspection Act and its regulations are inapplicable since UP5683 was not "in use" at the time of LeDure's injury. We further hold that LeDure's injuries were not reasonably foreseeable under the Federal Employers' Liability Act and thus Union Pacific breached no duty of care. For those reasons, we AFFIRM the grant of summary judgment for Union Pacific.